UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
:
ALEXANDRA FIALLOS, as Parent and Natural :
Guardian of L.V., and ALEXANDRA FIALLOS, :
individually, :
: 25-CV-7281 (JMF)
Plaintiffs, :
: OPINION AND ORDER
-v- :
:
MELISSA AVILES-RAMOS et al., :
:
Defendants. :
:
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      This case is one of many in this District brought by the same lawyers against the New York City Department of Education and its Chancellor (together, the "DOE") seeking to secure funding under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, for a disabled child attending a school called the International Institute for the Brain ("iBrain"). Plaintiff Alexandra Fiallos, suing on her own behalf and on behalf of her child, L.V. (together, "Plaintiff"), has already secured a "Pendency Order," which guarantees funding for L.V.'s education at iBrain while Plaintiff's claims are resolved through the IDEA's administrative process. Notwithstanding that, Fiallos — or, perhaps more accurately given the discussion below, her counsel — has filed four separate emergency motions for temporary restraining orders and preliminary injunctions against the DOE. *See* ECF Nos. 5, 22, 40.[1] In this Opinion, the Court addresses the first such motion in this case, in which Fiallos seeks an order compelling the DOE to expedite resolution of her claim through the administrative process. For

---

[1]     As discussed below, the fourth motion was filed in a separate case.

the reasons that follow, that motion is DENIED as Fiallos cannot show irreparable harm (or perhaps any harm at all). Nor does she satisfy any other requirement for injunctive relief.

## BACKGROUND

The relevant facts are not in dispute and, thus, will be recounted only briefly.

### A. Statutory Background

"The IDEA offers federal funds to states that demonstrate, *inter alia*, that they have developed plans to assure 'all children with disabilities residing in the state' a 'free appropriate public education' ('FAPE')." *Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 386 F.3d 158, 159-60 (2d Cir. 2004) (quoting 20 U.S.C. § 1412(a)(1)(A)). "The centerpiece of the IDEA's education delivery system is the individualized education program, or IEP." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002) (internal quotation marks omitted). A parent who is dissatisfied with a child's IEP or the State's provision of a FAPE may file a "Due Process Complaint" or "DPC" seeking administrative and judicial review pursuant to IDEA-mandated procedures. *See Bd. of Educ. of Poughkeepsie City Sch. Dist. v. O'Shea*, 353 F. Supp. 2d 449, 454 (S.D.N.Y. 2005). During the pendency of such proceedings, the IDEA requires the State to "maintain the educational status quo while the parties' dispute is being resolved." *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015) (internal quotation marks omitted). In particular, the "stay-put" provision of the statute states that "the child shall remain in the then-current educational placement," "unless the State or local educational agency and the parents otherwise agree." 20 U.S.C. § 1415(j); *see also* 34 C.F.R. § 300.518. It is designed to ensure that the school district "continue[s] funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete." *E. Lyme Bd. of Educ.*, 790 F.3d at 452.

B.  **Factual Background**

Alexandra Fiallos is the parent and natural guardian of L.V., a nineteen-year-old disabled student.  ECF No. 20 ("Compl."), ¶¶ 65-66.  On July 7, 2025, Fiallos requested an administrative hearing with an Impartial Hearing Officer ("IHO"), claiming that L.V. was entitled to FAPE funding for the 2025-2026 school year and that iBrain was an appropriate unilateral placement for L.V.  *Id.* ¶ 92.  On September 15, 2025 — after this suit was filed — the IHO held a hearing on Fiallos's claim and entered a Pendency Order, mandating that the DOE pay for L.V.'s tuition at iBrain, transportation costs for daily round trips every school day, and nursing services for every school day for the 2025-2026 school year while her due process claim is being adjudicated.  ECF No. 24-4, at 2.  At the hearing, the IHO also extended the deadline for briefing on Fiallos's underlying claim to October 20, 2025.  ECF No. 37, at 2 n.2.  To the Court's knowledge, the IHO has not yet entered a final decision as to Fiallos's claim.

C.  **Procedural Background**

On July 18, 2025, a group of fifteen plaintiffs — including Fiallos — filed suit in this District seeking declaratory and injunctive relief under the IDEA while their DPCs were being adjudicated by the DOE.  *See Frias v. Aviles-Ramos*, 25-CV-5936 (JPC) (S.D.N.Y. July 18, 2025), ECF No. 1 ("*Frias* Compl."), at 41-43.  Shortly thereafter, the plaintiffs filed a motion for emergency relief, identical in most respects to the first motion that Fiallos filed in this case.  *See Frias*, 25-CV-5936 (S.D.N.Y. Aug. 22, 2025), ECF No. 18.  On August 29, 2025, however, the Honorable John P. Cronan dismissed the claims of all the plaintiffs in that case — including Fiallos — save one, on the ground that the plaintiffs' claims had been "improperly joined." *Frias v. Aviles-Ramos*, No. 25-CV-5936 (JPC), 2025 WL 2494336, at *3 (S.D.N.Y. Aug. 29,

2025).  The court dismissed the claims of Fiallos and the other plaintiffs "without prejudice to those Plaintiffs refiling each of their claims in a separate civil action."  *Id.* at *4.

Four days later, Fiallos and the other thirteen plaintiffs dismissed from *Frias* refiled an almost identical Complaint in this case, alleging (as they had in *Frias*) that joinder was proper pursuant to Rule 20(a)(1) of the Federal Rules of Civil Procedure, *see* ECF No. 1, ¶¶ 374-75; *see also Frias* Compl. ¶¶ 232-33 — but making no mention of Judge Cronan's decision in *Frias*.  Soon thereafter, they filed the first motion for emergency relief at issue here.  *See* ECF No. 5.  On September 5, 2025, the Court ordered Plaintiffs to either "show cause . . . why all Plaintiffs in this case other than Alexandra Fiallos should not be severed or their claims dismissed" or to "inform the Court by letter that they consent to severance."  ECF No. 16.  On September 9, 2025, the plaintiffs filed a letter consenting to severance, ECF No. 17, and, on September 10, 2025, the Court dismissed all claims by all plaintiffs save Fiallos "without prejudice to the filing of new, separate, lawsuits by the dismissed plaintiffs."  ECF No. 19.[2]

As noted, Fiallos has now filed three separate emergency motions for injunctive relief.  In the first emergency motion, filed on September 4, 2025, she (and the other Plaintiffs, since dismissed) asked the Court to "direct[] DOE and its agent," the Office of Administrative Trials

---

[2]     On September 11, 2025, the thirteen plaintiffs dismissed from this case refiled their own cases.  Somewhat remarkably (given Judge Cronan's ruling and this Court's Order to Show Cause), they did not do so in thirteen separate lawsuits.  Instead, Plaintiff's counsel filed four new lawsuits, each with multiple plaintiffs purporting, once again, to be properly joined under Rule 20(a)(1).  *See Davis v. Aviles-Ramos*, 25-CV-7555 (KPF) (S.D.N.Y.), ECF No. 1, ¶¶ 155-58; *Zayas v. Aviles-Ramos*, 25-CV-7561 (AT) (S.D.N.Y.), ECF No. 1, ¶¶ 187-90; *Crespo v. Aviles-Ramos*, 25-CV-7563 (JAV) (S.D.N.Y.), ECF No. 1, ¶¶ 128-31; *Nicholls v. Aviles-Ramos*, 25-CV-7569 (JPO) (S.D.N.Y.), ECF No. 1, ¶¶ 170-73.  In each case, as in this one, the plaintiffs have since filed multiple requests for emergency relief.  *See Frias*, 25-CV-5936, ECF Nos. 18, 28, 33; *Davis*, 25-CV-7555, ECF Nos. 6, 11; *Zayas*, 25-CV-7561, ECF Nos. 6, 13; *Crespo*, 25-CV-7563, ECF Nos. 6, 13, 25; *Nicholls*, 25-CV-7569, ECF Nos. 7, 13.  In at least one case, their requests have already been denied.  *See Crespo*, 25-CV-7563, ECF No. 21 (denying two motions for temporary restraining orders and preliminary injunctions).

and Hearings Special Education Hearings Division, "to either conclude the due process proceedings in accordance with the expedited timelines or, in the alternative, find that DOE per se failed to provide a FAPE" to L.V. by failing to adhere to statutory timelines. ECF No. 8 ("Pl.'s Mem."), at 25. In the second emergency motion, filed on September 15, 2025 (after Fiallos had filed the operative Amended Complaint, *see* ECF No. 20, and on the same day that the IHO held a hearing on Fiallos's DPC), Fiallos asked the Court to direct the DOE to make payments to Fiallos in accordance with the IHO's Pendency Order in "a reasonable time period in accordance with the tuition, special transportation and nursing agreements" between Fiallos and iBrain. ECF No. 25 ("Pl.'s Second Mem."), at 16. In a telephone conference held on September 18, 2025, the Court summarily denied that motion on the ground that it was foreclosed by the Second Circuit's decision in *Mendez v. Banks*, 65 F.4th 56, 64 (2d Cir. 2023) — another case brought by Plaintiff's counsel with respect to a student enrolled at iBrain. *See* ECF No. 39-1 ("Tr."); *see also* ECF No. 31. Notwithstanding that ruling, Fiallos's third emergency motion — filed on October 9, 2025 — seeks the very same relief. *See* ECF No. 40. The Court summarily denied her request for a temporary restraining order by Memorandum Opinion and Order; the parties are in the process of briefing her request for a preliminary injunction. *See* ECF Nos. 41, 44, 48.

## DISCUSSION

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Hanson Tr. PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985) (describing a preliminary injunction as "one of the most drastic tools in the arsenal of judicial remedies"). A party seeking a preliminary injunction "must ordinarily establish (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or

(b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (quoting *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011)) (internal quotation marks omitted). Significantly, "[a] showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)) (internal quotation marks omitted). Thus, if a party fails to show irreparable harm, a court need not even address the remaining elements. *See, e.g.*, *Monowise Ltd. Corp. v. OZY Media, Inc.*, 17-CV-8028 (JMF), 2018 WL 2089342, at *1 (S.D.N.Y. May 3, 2018).

Fiallos's first motion for emergency relief — the only one addressed here — fails every one of these requirements. Most significantly, she fails to demonstrate that she would suffer any irreparable harm — or, likely, any harm at all — absent a preliminary injunction.

**A.  Irreparable Harm**

The Court begins with the irreparable harm requirement. "Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Actavis PLC*, 787 F.3d at 660 (quoting *Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999)) (internal quotation marks omitted). Significantly, the claimed harm must not only be "irremediable," but it must also be "certain and great" — such that a plaintiff who is denied relief "will . . . suffer serious consequences." *Flood v. Kuhn*, 309 F. Supp. 793, 799 (S.D.N.Y. 1970). "The burden of proof and persuasion rests squarely on the party moving for a preliminary injunction to show that

irreparable harm is likely." *Students for Fair Admissions v. U.S. Mil. Acad. at W. Point*, 709 F. Supp. 3d 118, 136 (S.D.N.Y. 2024) (quoting *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 34 (2d Cir. 2015) (summary order)) (internal quotation marks omitted).

Fiallos cannot carry this burden.  She asserts that she "need not put forth a substantial amount of evidence of irreparable injury because . . . such injury is obvious." Pl.'s Mem. 19. But the cases she cites in support of that assertion stand for the proposition that "the denial of a FAPE, even for a limited period, constitutes irreparable harm that cannot be adequately remedied by monetary compensation."  ECF No. 34 ("Pl.'s Reply"), at 9; *see also* Pl.'s Mem. 19.  Fiallos, however, "does not even claim, much less muster evidence" in her first emergency motion "that [L.V.] is at risk of losing . . . placement at iBrain," *Otero v. Aviles-Ramos*, No. 25-CV-2773 (PAE), 2025 WL 2078950, at *5 (S.D.N.Y. July 24, 2025), which is the FAPE to which her motion claims L.V. is entitled.  Indeed, at the hearing regarding Fiallos's second emergency motion, her counsel was unable, when directly asked by the Court, to even represent that there was a risk to L.V.'s placement at iBrain that was being addressed by this litigation. *See* Tr. 5-6. Nor did Fiallos claim in her Complaint or her first two motions for emergency relief that L.V.'s placement at iBrain was potentially in jeopardy given the Pendency Order.[3]

As a matter of fact, separate and apart from the Pendency Order, Fiallos's contract with iBrain appears to guarantee L.V.'s placement at iBrain pending adjudication of her DPC.  In relevant part, it provides that if Fiallos "seek[s] public funding from the local school district to pay" her fees by "filing a Due Process Complaint," as she has, iBrain will "suspend payment

---

[3]   In her third motion for emergency relief, Fiallos has changed her tune.  She now argues that a failure to grant relief would jeopardize L.V.'s placement at iBrain because the school is in financial straits and "at risk of collapse."  ECF No. 41, at 2; *see id.* at 11-12, 14; *see also* ECF No. 42, ¶¶ 21-30.  The Court does not address that allegation here.

obligations" until "an interim or final administrative or judicial decision is made obligating" payment.  ECF No. 24-1, at 52; ECF No. 24-2, at 1.  In another case brought by Plaintiff's counsel on behalf of a student enrolled at iBrain, this Court concluded that that provision undermined the plaintiff's Article III standing to seek relief in federal court.  *See Cohen v. New York City Dep't of Educ.*, No. 18-CV-11100 (JMF), 2018 WL 6528241, at *2 (S.D.N.Y. Dec. 12, 2018) (concluding, based on the terms of a similar contract with iBrain, that the plaintiffs lacked standing to sue the DOE because they had shown only "speculative injury").  Whether or not that is the case here (an issue raised below), the provision certainly defeats any claim that L.V.'s FAPE is at risk.  *See, e.g.*, *Moonsammy v. Banks*, No. 24-CV-2616 (PAE), 2024 WL 2831042, at *7 (S.D.N.Y. June 3, 2024) (noting that the plaintiff did "not offer evidence" that "a delay or failure to pay has jeopardized their child's educational placement" at iBrain because the "enrollment contract . . . suspends any obligation on their part to pay" (cleaned up)).

Indeed, at bottom, Fiallos's irreparable harm argument rests on the premise that a failure to timely comply with the procedural requirements of the IDEA is itself "a *per se* denial of FAPE."  Pl.'s Mem. 7.  But "a bare procedural violation, divorced from any concrete harm," does not even "satisfy the injury-in-fact requirement of Article III."  *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 185 (S.D.N.Y. 2017).[4]  And "to show irreparable harm, a plaintiff must do more than merely allege harm sufficient to establish standing."  *Frey v. Bruen*, No. 21-CV-5334 (NSR), 2022 WL 522478, at *9 (S.D.N.Y. Feb. 22, 2022) (internal quotation

---

[4]   Moreover, the IDEA itself provides a remedy for some of the procedural violations alleged by Fiallos.  For example, although she argues that a failure to timely hold a resolution meeting should be considered a "*per se* denial of FAPE," Pl.'s Mem. 7, IDEA regulations provide that if a school district "fails to hold the resolution meeting . . . within 15 days of receiving notice of a parent's due process complaint," the parent may "seek the intervention of a hearing officer to begin the due process hearing timeline," 34 C.F.R. § 300.510(b)(5).

marks omitted). Granted, Fiallos cites cases holding that violations of the IDEA's procedural requirements are enough to establish Article III standing in federal court. *See, e.g.*, Pl.'s Mem. 19 (citing *LV v. New York City Dep't of Educ.*, No. 03-CV-9917 (RJH), 2005 WL 2298173, at *5 n.4 (S.D.N.Y. Sept. 20, 2005)). But these cases predate the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), which reaffirmed that "bare procedural violation[s], divorced from any concrete harm" do "not suffice for Article III standing." *Id.* at 440 (quoting *Spokeo, Inc. v. Robins*, 578 U. S. 330, 341 (2016)) (alteration in original). In light of *TransUnion*, it is therefore unclear that Fiallos has suffered enough cognizable harm to even support Article III standing. She certainly has not established a risk of *irreparable* harm.

In short, given that (1) the IHO has held a hearing on Fiallos's DPC, (2) L.V.'s placement at iBrain for the 2025-2026 year appears to be secure by virtue the Pendency Order, and (3) the DOE has represented explicitly (and repeatedly) that it is "committed to making the requisite payments and will do so voluntarily in the ordinary course of business, without the need for Court intervention," ECF No. 29, at 2 (quoting *Mendez*, 65 F.4th at 60); *see also* Tr. 24; ECF Nos. 39, 46, it is difficult to fathom what "injury, reparable *or* irreparable," Fiallos would suffer absent court intervention, *Mendez*, 65 F.4th at 64 (emphasis added). Her first motion for emergency relief must be and is denied on that basis alone.

**B. The Other Preliminary Injunction Factors**

Although the Court "need not address the remaining elements" of the preliminary injunction test, *Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d 207, 221 (S.D.N.Y. 2019), it will touch on them briefly for the sake of the record.

First, Fiallos cannot show that it would serve the public interest for the Court to grant her emergency relief. For one, doing so would encourage Fiallos's counsel to continue what appears

9

to be a long history of questionable conduct in this Circuit. As several courts have noted, Fiallos's counsel's law firm was founded by the founder of iBrain — the very school that is "seeking public funding from the City for iBRAIN's tuition and related services" in this and many other lawsuits. *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 529 (2d Cir. 2020); *see also, e.g.*, *Ferreira v. New York City Dep't of Educ.*, No. 19-CV-2937 (JMF), 2020 WL 1158532, at *2 (S.D.N.Y. Mar. 6, 2020).[5] And rather than engage in good faith with the IEP process, iBrain and its related counsel have variously attempted to "force the DOE to reimburse tuition costs at [iBrain] without having to go through the normal collaborative process" and "orchestrated" a "broader campaign to disrupt the IEP creation process." *Neske v. New York City Dep't of Educ.*, No. 22-2962-CV, 2023 WL 8888586, at *2 (2d Cir. Dec. 26, 2023) (summary order). It is not surprising, therefore, that courts have routinely denied Fiallos's counsel's regular requests for emergency preliminary relief. *See* ECF No. 39, at 2 (noting that Plaintiff's counsel has filed over thirty unsuccessful motions for emergency relief); *see, e.g.*, *Crespo*, 25-CV-7563, ECF No. 21 (denying two motions for preliminary relief); *Otero*, 2025 WL 2078950, at *1 (denying motion for preliminary relief); *Bruckauf v. Aviles-Ramos*, 25-CV-5679 (KPF) (S.D.N.Y. Sept. 2, 2025), ECF No. 20 (same); *Mondano v. Banks*, No. 24-CV-8241 (DEH), 2025 WL 1984427, at *2 (S.D.N.Y. July 17, 2025) (same); *Ramos v. Banks*, Nos. 24-CV-5109 (LGS), 24-CV-5136 (LGS), 2025 WL 1455703, at *7-8 (S.D.N.Y. May 21, 2025) (same); *Ogunleye v. Banks*, No. 23-CV-9092 (VSB), 2025 WL 1078301, at *2 (S.D.N.Y. Mar.

---

[5]   In 2018, a whistleblower complaint was filed alleging that the founder of iBrain was running the law firm "as part of a scheme to funnel federal and state education funds to [himself] personally." *Ferreira*, 2020 WL 1158532, at *2 n.1 (citing *Batmanghelidj v. Int'l Acad. of Hope*, No. 18-CV-6562 (VM) (S.D.N.Y. July 20, 2018), ECF No. 1, ¶¶ 1-4). That case was eventually settled. *See Batmanghelidj*, No. 18-CV-6562 (VM) (S.D.N.Y. Apr. 24, 2019), ECF No. 25.

27, 2025) (same); *Moonsammy*, 2024 WL 2831042, at *7 (granting motion as to pendency determination and denying as to payment). Nevertheless, they persist.

Making matters worse, many of these requests for emergency relief have been borderline frivolous. *See, e.g.*, *Neske v. New York City Dep't of Educ.*, No. 20-CV-3912 (VEC), 2021 WL 797653, at *6 (S.D.N.Y. Feb. 25, 2021) (noting that "three Second Circuit decisions compel dismissal" of an action filed by Fiallos's counsel, "demonstrating that Plaintiffs have no likelihood of success on the merits"). Take Fiallos's second motion for emergency relief in this case, which sought expedited pendency payments to iBrain after the IHO had granted her a "Pendency Order" confirming that L.V.'s pendency placement was iBrain. Pl.'s Second Mem. 16. In that motion, Fiallos made no claim that L.V.'s placement at iBrain was at risk. To the contrary, counsel conceded on the record that there was no evidence that Plaintiff-Student's placement at iBrain was at risk, *see* Tr. 15, and implied that iBrain could go "four months, five months, six months" without payment before there was any risk of it "shutting down" or "the student . . . being evicted," *id*. at 16.[6] Given that, Fiallo's request was squarely foreclosed by the Second Circuit's decision in *Mendez*, which held that "the IDEA's stay-put provision does not create an entitlement to immediate payment or reimbursement. Parents or guardians may still be able to obtain such relief if they establish that a delay or failure to pay has jeopardized their child's educational placement. But absent such a showing, the DOE is not obliged to circumvent its ordinary payment procedures." 65 F.4th at 63. To grant Plaintiff relief given this track record would incentivize more meritless, if not frivolous, motions.[7]

---

[6]     As noted, *see supra* note 3, Fiallos now claims otherwise.

[7]     Fiallos's motions are not the only questionable tactics counsel has employed in connection with this case. As noted, Fiallos's counsel initially filed a lawsuit on behalf of Fiallos and fourteen other plaintiffs. After Judge Cronan ruled that joinder was improper, *see Frias*, 2025 WL 2494336, at *3, counsel turned around and filed this lawsuit on behalf of the fourteen

11

For similar reasons, Fiallos cannot show that the balance of hardships tips in her favor. Indeed, she fails to show that she will suffer any hardship at all absent the relief that she seeks in her first emergency motion. She asks the Court to "direct[] Defendants to comply with the federal and state compliance deadlines . . . to the extent that those deadlines have not yet passed" or, in the alternative to "declar[e] that the failure to hold a Resolution Meeting and conduct a timely Due Process Hearing is a *per se* denial of a free appropriate public education." ECF No. 6, at 2. As noted above, however, the due process hearing has already occurred and L.V.'s pendency at iBrain has been established for the period during which Fiallos's claim is being administratively adjudicated. *See* ECF No. 24-4, at 2. In light of those facts, it is unclear what hardship she faces at all as a result of the DOE's delay in conducting hearings or reaching a final determination on her claim. By contrast, the hardships imposed on the DOE as a result of this and the many other lawsuits brought by Fiallos's counsel, with their many meritless requests for emergency relief, are well-documented, *see, e.g.*, *Neske*, 2023 WL 8888586, at *2, as is the "practical realit[y] of [the] thousands of funding requests under the IDEA that DOE receives" every year, *Ramos*, 2025 WL 1455703, at *5 (quoting *Mendez*, 65 F.4th at 63) (cleaned up).

Finally, and in any event, Fiallos has not shown that she is likely to succeed on the merits of her claim. The gravamen of her claim is that her procedural rights were violated by the IHO's failure to adjudicate her due process claim within the statutorily prescribed timeline. *See, e.g.*, Pl.'s Mem. 18-19. But the IDEA authorizes the IHO to "grant specific extensions of time . . . at the request of either party." 34 C.F.R. § 300.515(c). As for the DOE's failure to convene a

---

dismissed plaintiffs under a nearly identical theory. Incredibly, counsel made no mention of Judge Cronan's ruling. When this Court raised the joinder issue *sua sponte*, *see* ECF No. 10, counsel consented to severance and dismissal of all but Fiallos's claims, *see* ECF No. 19, and then promptly filed four new lawsuits, all with plaintiffs joined under the very same theory.

12

resolution meeting, the IDEA itself provides a remedy by authorizing a parent to "seek the intervention of a hearing officer to begin the due process hearing timeline." 34 C.F.R. § 300.510(b)(5). At bottom, therefore, Fiallos's motion amounts to little more than an effort to appeal an IHO's seemingly routine decision to grant an extension of the compliance date for her claim — hardly a matter for federal court adjudication. And she cites scant authority — none of it controlling — for the proposition that she should not be held to an administrative exhaustion requirement, resting entirely on a conclusory assertion that doing so would be "inadequate or futile." Pl.'s Mem. 15-16. And again, the inadequacy of the administrative process to Fiallos is especially hard to swallow given that the underlying relief she seeks — placement of L.V. at iBrain for the current school year — has already been guaranteed while her DPC proceeds.

## CONCLUSION

At the end of the day, Fiallos's first emergency motion is little more than an attempt to "circumvent[]" the "ordinary . . . procedures" that apply to IDEA claims. *Mendez*, 65 F.4th at 63; *see also, e.g.*, *Otero*, 2025 WL 2078950, at *6 (denying an emergency motion as an attempt "to jump the payment queue without making the required showing" that payment in the ordinary course of business would result in any irreparable harm). Accordingly, it must be and is DENIED. Moreover, for the reasons discussed above, it is not even clear that Fiallos has suffered an injury-in-fact sufficient to establish standing to maintain her suit in this Court. *See, e.g.*, *Cohen*, 2018 WL 6528241, at *2; *see also TransUnion*, 594 U.S. at 426 (stating that "Congress's creation of a statutory . . . obligation . . . does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III"); *Navarro v. Bldg. Serv., Inc.*, No. 23-CV-7343 (ARR) (MMH), 2024 WL 4225747, at *6 (E.D.N.Y. Sept. 18, 2024) ("Allegations that a defendant failed to comply with a statutory

procedural obligation, without more, are generally insufficient to establish standing."). Accordingly, and mindful of the Court's independent obligation to confirm its own jurisdiction, *see, e.g.*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists"), Fiallos is ORDERED to show cause, no later than **October 30, 2025**, and by letter not to exceed five pages, why her suit should not be dismissed for lack of subject-matter jurisdiction. Defendants shall file a response, not to exceed five pages, no later than **November 10, 2025**. No reply may be filed absent prior leave of Court.

    The Clerk of Court is directed to terminate ECF No. 5.

    SO ORDERED.

Dated: October 20, 2025  
       New York, New York

                                                  JESSE M. FURMAN  
                                                  United States District Judge